UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS LEE WINGARD,

      Petitioner,                   Case Number 2:22-CV-10488
                                       HONORABLE PAUL D. BORMAN

v.

CHANDLER CHEEKS,

      Respondent.

_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Thomas Lee Wingard, ("Petitioner"), confined at the Parnall Correctional Facility in Jackson, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree murder, Mich. Comp. Laws § 750.317. For the reasons that follow, the petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

**I.**

Petitioner was originally charged with first-degree murder and convicted following a bench trial in the Wayne County Circuit Court of the lesser included offense of second-degree murder. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals when it addressed petitioner's claim

1

on remand from the Michigan Supreme Court, which facts are presumed correct on

habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d

410, 413 (6th Cir. 2009):

> At approximately 6:00 a.m. on August 18, 2013, Detroit Police Officers DeAndre Gaines and Darrell Lightfoot were dispatched to 2277 Longfellow Street in Detroit, Michigan. Upon arriving at the scene, defendant [Wingard] made contact with the officers and identified himself as the individual who had called 911. According to defendant, he and his wife had been living in a recreational vehicle (RV) behind the house at the Longfellow address since a 2009 house fire. He explained to the officers that he awoke at 3:36 a.m. on the 18th after hearing his dogs barking, took his dogs from the RV into the house to eat, worked on the house's water heater for approximately an hour, and then returned to the RV. When he returned to the RV, defendant noticed that the RV door was open and found his wife's body in a pool of blood on the bed inside. Defendant indicated that he immediately called 911 and performed cardiopulmonary resuscitation (CPR) until the officers arrived. The officers found a bloody, 21-and-a-half-inch pipe underneath defendant's wife's body at the scene.

> On August 22, 2013, defendant contacted Detroit Police Officer Nancy Foster, the officer in charge on this case, and requested permission to obtain his wallet. Foster agreed, and defendant retrieved his wallet from her on the same day. The only exchange between Foster and defendant during this interaction was defendant "ask[ing] how the investigation was going," and Foster replying that "it was still being investigated." Shortly after leaving, however, defendant returned to the police station and asked to speak with Foster. Foster advised defendant of his *Miranda* rights, and defendant agreed to make a statement and initialed and signed a form indicating the same.… After signing his statement, Foster asked defendant if he would be willing to return for a second interview at a later date, and defendant agreed to do so.

> The second interview took place on August 28, 2013, at the Dearborn Police Department, and defendant was transported by Foster and another officer to that location. Upon arriving, defendant agreed to participate in a polygraph examination with an individual who is only

2

referred to as "Sergeant Gee" in the record. It appears that the polygraph examination lasted from "about" 5:00 p.m. until approximately 11:30 p.m. After that interview, defendant again agreed to make a statement to Foster after being advised of his *Miranda* rights.

*People v. Wingard*, No. 344472, 2020 WL 5495212, *1-2 (Mich. Ct. App. Sept. 10, 2020) (On Remand) (internal footnotes omitted).

At trial, Sergeant Foster testified that petitioner provided two statements.  In the first statement petitioner claimed that earlier in the day a man came to the trailer looking for work. ECF No. 8-7, PageID.1312.  That night, petitioner stated that he was in the house with two of his dogs, when they began barking. He went back to the trailer and found his wife lying in blood. *Id.*

Foster testified that she advised petitioner of his rights a second time, prior to petitioner providing a second statement. *Id.*, PageID.1320.  During the second interview, petitioner claimed that he "woke up around 3:36 a.m. and touched Maryann and she was wet."  Petitioner "turned the lights on and [] saw that she was bloody and a pipe was in the bed with her.  She slept next to the window and the pipe was between her and the window." *Id.*, PageID.1323.

During the second interview, Foster referenced Petitioner's earlier statement that, "no one broke into the RV and the only person that could have killed her was you[.]"  He replied, "Yes. It has to be." *Id*.  Petitioner stated that he didn't

remember doing it, did not know why he killed his wife, did not know if anyone else came into the RV, and lied during the earlier interview to protect himself. *Id.* Petitioner also stated that he would like to speak to a doctor stating, "I want to know what prompt this or triggered this to happen. I thought things were good finally." *Id.,*PageID.1325.

Following the bench trial, Petitioner was convicted of the lesser included offense of second-degree murder.

The Michigan Court of Appeals denied Petitioner relief. *People v. Wingard*, No. 323316, 2016 WL 191998 (Mich. Ct. App. Jan. 14, 2016).

Petitioner appealed the Michigan Court of Appeals' decision to the Michigan Supreme Court. *People v. Wingard*, 500 Mich. 1015; 895 N.W.2d 928 (2017). The Michigan Supreme Court vacated the portion of the opinion addressing *Miranda*. *Id.* The Supreme Court then remanded the case to the Wayne Circuit Court for an evidentiary hearing, pursuant to *People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973), directing the circuit court to "determine whether trial counsel was ineffective for failing to move to suppress petitioner's confession under *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Missouri v. Seibert*, 542 U.S. 600 (2004)." *Wingard*, 500 Mich. at 1015.

4

On March 16, 2018, the trial court held the evidentiary hearing and denied Petitioner's motion for a new trial. ECF No. 8-15, PageID.1596.

On July 1, 2018, Petitioner filed a delayed application for leave to appeal, which was denied. *People v. Wingard*, No. 344472 (Mich. Ct. App. Nov. 13, 2018).

Petitioner appealed the order to the Michigan Supreme Court.  The Michigan Supreme Court remanded the case back to the Michigan Court of Appeals, stating that "[t]he defendant was entitled to an appeal of right because he sought to appeal an order entered by the trial court following a remand from an appellate court in a prior appeal of right." *People v. Wingard,* 504 Mich. 978, 933 N.W.2d 693 (2019).

An appeal followed that remand and was denied. *People v. Wingard*, No. 344472, 2020 WL 5495212 (Mich. Ct. App. Sept. 10, 2020) (On Remand); *lv. den.* 507 Mich. 883, 954 N.W.2d 823 (2021).

Petitioner seeks habeas relief on the following ground:

Defendant's court-appointed attorney was ineffective for failing to move to suppress [Wingard's] confession made on August 28, 2013.

## II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III.

Petitioner argues that his trial counsel was ineffective for failing to move to suppress his confession on the ground that it was involuntary and taken in violation of *Miranda v. Arizona, infra.*

To prevail on his ineffective assistance of counsel claim, Petitioner must show that the state court's conclusion regarding the claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985).  An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)).  An involuntary confession may

result from psychological, no less than physical, coercion or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991).

A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966). Coercive police activity is a necessary predicate to finding that a defendant's waiver of his *Miranda* rights was involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167, 169-70 (1986). A defendant's deficient mental condition, by itself, is insufficient to render a waiver involuntary. *Id.* at 164-65. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Connelly*, 479 U.S. at 165.

Likewise, in determining whether a confession is voluntary, the pertinent question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at 112. These circumstances include:

1. police coercion (a "crucial element");
2. the length of interrogation;
3. the location of interrogation;
4. the continuity of the interrogation;
5. the suspect's maturity;
6. the suspect's education;
7. the suspect's physical condition and mental health;
8. and whether the suspect was advised of his or her *Miranda* Rights.

8

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in a defendant making a statement to the police should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, a confession should not be deemed involuntary in the absence of coercive police activity. *Colorado v. Connelly,* 479 U.S. at 167.

Petitioner argues that defense counsel should have moved to suppress his statement to Sergeant Foster, claiming that he was promised no jail time by Sergeant Gee if he made an incriminating statement.

The Michigan Court of Appeals rejected this claim as follows:

> First, defendant contends that Kinney [defense counsel] should have moved to suppress his statement to Sergeant Foster because defendant received a promise of no jail time in exchange for the incriminating statements he made to authorities. According to defendant, during the polygraph process, Sergeant Gee told him that the police had a lot of evidence against him, and that, if they could come up with a logical explanation for the killing, they could reduce defendant's chance of being sentenced to life in prison to sentences involving little to no jail time. Defendant has failed to establish that Kinney actually knew about Sergeant Gee's alleged promise of leniency. At the *Ginther* hearing, Kinney replied no when asked: "And was there anything in your discussions, either in the letters or your physical discussions with the defendant, that would indicate that his statements to the police were involuntary such that they would violate *Miranda*?" The trial court explicitly found that Kinney's testimony was credible. We cannot conclude that this was clearly erroneous, as we must give regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). Thus, defendant has failed to establish that Kinney knew about the alleged promise of leniency; therefore, defendant cannot prove that Kinney's failure to act on the alleged promise constituted ineffective assistance.

Second, defendant has failed to establish that even if Kinney had moved to suppress defendant's August 28, 2013 confession, such a motion was likely to succeed. On appeal, defendant merely asserts: "Defense counsel's performance fell below an objective standard of reasonableness because if Mr. Wingard's claim his confession was only made in exchange for a promise of no jail time, the involuntary nature of this confession would have supported a request to suppress it under *Walker*.[1] " He does not provide any caselaw that demonstrates that a confession made in exchange for a promise of no jail time makes a confession involuntary. Furthermore, defendant himself did not testify that Sergeant Gee made a promise of no jail time in exchange for a confession. Rather, defendant testified that "[h]e said if we could come up with a logical explanation of what happened that night, I could reduce my chances of prison, from little or no jail time, as opposed to the rest of my life in prison." This was not a promise of no jail time at all in exchange for a confession. To the contrary, depending on what information defendant provided about the circumstances surrounding his wife's murder, he would face no jail time (defendant was not the killer or he acted in self-defense) up to life imprisonment for premeditated murder. Furthermore, the confession that was admitted at trial was made to Sergeant Foster, not Sergeant Gee, although defendant originally indicated that Gee manipulated his eventual confession. Nonetheless, there is no allegation that Sergeant Foster made any promise of leniency. Therefore, defendant has failed to establish his counsel was ineffective for not moving for the suppression of defendant's confession on this ground.

*People v. Wingard*, 2020 WL 5495212, *3-4.

A confession, in order to be deemed voluntary, cannot be the result of any direct or implied promises, however slight. *See Shotwell Mfg. Co. v. U.S.,* 371 U.S. 341, 347 (1963). Police promises of leniency and threats of prosecution can be objectively coercive, as required for a finding that a confession was involuntary

---

[1] *People v. Walker*, 374 Mich. 331; 132 N.W.2d 87 (1965)(footnote original).

due to police coercion. *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir.

2003).  However, courts have applied a totality of circumstances test in

determining whether a police officer's promises of leniency made the defendant's

confession involuntary. *See Holland v. Rivard*, 800 F.3d 224, 241-42 (6th Cir.

2015); *Loza v. Mitchell*, 766 F.3d 466, 478-80 (6th Cir. 2014); *Simpson v. Jackson*,

615 F.3d 421, 433-34 (6th Cir. 2010), *judgment vacated sub nom. Sheets v.

Simpson on other grnds*, 565 U.S. 1232 (2012).  Moreover, promises of leniency

are coercive only "if they are broken or illusory[.]" *United States v. Binford*, 818

F.3d 261, 271 (6th Cir. 2016) (quoting *United States v. Johnson*, 351 F.3d at 261-

62).  "[A]n illusory promise is a statement in the form of a promise, but lacking its

substance in that it does not actually commit the police to undertake or refrain from

any particular course of action." *Id.* (quoting *Johnson*, 351 F.3d at 262, n. 1).  The

Sixth Circuit has ruled that "promises to recommend leniency and speculation that

cooperation will have a positive effect do not make subsequent statements

involuntary." *Id.* at 271-72 (quoting *United States v. Delaney*, 443 F. App'x 122,

129 (6th Cir. 2011) (citation and internal quotation marks omitted)).  Thus, a

promise of leniency made by the police in exchange for a defendant's cooperation

are usually permissible. *Id.*

　　　In the present case, the Michigan Court of Appeals reasonably determined

that Sergeant Gee did not make any false promises to induce Petitioner's

confession.  Sergeant Gee did not promise no jail time to Petitioner in exchange for his confession.  Instead, Sergeant Gee simply informed Petitioner that the evidence against him was strong, but offered Petitioner an opportunity to offer his side of the story.  Sergeant Gee advised Petitioner that depending on Petitioner's version of events, he could end up with little or no jail time.  Sergeant Gee's statement was not an illusory promise because if Petitioner could have convinced the police he was not the killer or had acted in self-defense, he would not have been charged with any crime.  If he convinced the police that the victim had provoked him, the police would only have charged him with the lesser included offense of voluntary manslaughter, which carries up to fifteen years in prison, as opposed to life in prison. *See* Mich. Comp. Laws § 750.321.

Even if Sergeant Gee's statement to Petitioner could be construed as a promise, it was not false because depending upon what Petitioner told the police, the police and the prosecutor had the power to refrain from charging Petitioner with any crime or only charging him with a lesser offense if his version of events exonerated him or mitigated the charge. *See United States v. Delaney*, 443 F. App'x at 129 (law enforcement agents' statements to defendant during custodial interrogation, explaining that he would get more points off his ultimate sentence under the federal Sentencing Guidelines if he cooperated and told the truth, and that his chances of going home that day were greater if he cooperated, were

12

permissible promises of possible leniency; certainly, the agents made these statements with the intent to compel defendant to testify, but they were not false); *See also Valle v. Butler*, 707 F. App'x 391, 399 (7th Cir. 2017) (state appellate court reasonably concluded that police officers' suggestions to habeas petitioner charged with first-degree murder that the shooting might have been an "accident" and that petitioner's explanation would "carry a lot of weight" did not amount to promise of leniency that could invalidate a confession).

Petitioner next claims that his confession should have been suppressed because Sergeant Gee failed to readvise petitioner of his *Miranda* warnings after he took the polygraph examination and before beginning his post-polygraph interview with Petitioner.

In *Wyrick v. Fields*, 459 U.S. 42 (1982), the United States Supreme Court held that a suspect did not need to be readvised of his *Miranda* rights, which he had waived in writing prior to the polygraph examination, at the conclusion of the polygraph and prior to the post-polygraph interview, because "the circumstances [had not] changed so seriously that his answers no longer were voluntary" and his waiver was still knowing and intelligent. 459 U.S. at 47-48. "Under *Fields*, additional [*Miranda*] warnings are only required if the circumstances seriously changed between the initial warnings and the interrogation." *Treesh v. Bagley*, 612

13

F.3d 424, 432 (6th Cir. 2010). Michigan law is in accord on this point. *See People*

*v. Ray*, 431 Mich. 260, 275-77; 430 N.W.2d 626 (1988).

Petitioner has failed to show that the circumstances had changed so

drastically between the giving of the initial *Miranda* warnings and the post-

polygraph examination, such that Sergeant Gee was required to readvise Petitioner

of his *Miranda* warnings. Moreover, Petitioner was readvised of his *Miranda*

warnings by Sergeant Foster prior to making his confession to her. Petitioner

failed to show that his confession should have been suppressed on this basis.

Petitioner next claims that his confession should have been suppressed

because Sergeant Foster failed to record it, as required by Mich. Comp. Laws §

MCL 763.8(2). The Michigan Court of Appeals rejected Petitioner's claim; the

law was inapplicable to Petitioner because he was not in custodial detention at the

time of his interrogation. *People v. Wingard*, 2020 WL 5495212, at *4.

Petitioner is not entitled to habeas relief on his claim that his statement should

have been suppressed because it was not recorded. Federal law does not require that

police interrogations of suspects must be audio or videotaped in order for the

statements to be admissible. *See Brown v. McKee,* 231 F. App'x 469, 475 (6th Cir.

2007); *Crenshaw v. Renico,* 261 F. Supp. 2d 826, 837 (E.D. Mich. 2003).

In addition, the Michigan Court of Appeals determined that Michigan's

requirement that police interrogations be recorded does not apply to persons who

14

are not in custodial detention.  Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is constrained to reject this portion of Petitioner's ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).  The failure by the police to record Petitioner's interrogation provided no basis to exclude his statement under either Federal or Michigan law, thus, counsel was not ineffective for failing to move for the suppression of the statement on this basis. *Brown,* 231 F. App'x at 475.

Petitioner next alleges that Sergeant Gee misled him after the polygraph examination when he informed Petitioner that the polygraph results would not clear him when the results were actually inconclusive, and when Sergeant Gee told Petitioner that the police had all of the needed evidence against him.

Police trickery alone will not invalidate an otherwise voluntary statement. *See Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969) (interrogator's misrepresentation that co-suspect had already confessed did not render suspect's confession coerced). Indeed, "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda's* concerns." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990); *see also Ledbetter*, 35 F.3d at 1066-70 (police officer's false statements that police had matched defendant's fingerprints to prints in victim's van and that two witnesses

15

had identified defendant did not make confession involuntary); *Terry v. Bock,* 208 F. Supp. 2d 780, 790 (E.D. Mich. 2002) (determination that defendant voluntarily waived his *Miranda* rights prior to making his second statement was not unreasonable, even if officer misrepresented to petitioner that co-defendant had made a statement against defendant); *United States v. Gibson*, 108 F. App'x 975, 977 (5th Cir. 2004) (officer's act of misrepresenting that the defendant failed the polygraph examination did not render his confession involuntary).

Petitioner finally argues that his statement should have been suppressed pursuant to the Supreme Court's holding in *Missouri v. Seibert, infra.* The Michigan Court of Appeals rejected this claim as follows:

> Seventh, defendant raises a challenge under *Missouri v. Seibert*, 542 U.S. 600; 124 S. Ct. 2601; 159 L. Ed. 2d 643 (2004). In *Seibert*, the United States Supreme Court analyzed the legality of a police tactic, in which a defendant first confessed, and then was advised of her *Miranda* rights and repeated her confession. *Id.* at 604. The Court held "that a statement repeated after a warning in such circumstances is inadmissible." *Id.* We conclude that *Seibert* is not applicable in this case because defendant was advised of his *Miranda* rights before his interview with Sergeant Gee. For *Seibert* to be applicable in this case, defendant must have confessed to Sergeant Gee without having first been advised of his *Miranda* rights and then received *Miranda* rights from Sergeant Foster before repeating his confession. As this did not occur here, *Seibert* is inapplicable. Therefore, Kinney did not provide ineffective assistance of counsel when he did not move to suppress defendant's statement under *Seibert*.

*People v. Wingard,* 2020 WL 5495212, at *5.

The Supreme Court in *Seibert* held that a midstream recitation of *Miranda* warnings, after a police interrogation commenced without first advising the defendant of his rights, did not comply with *Miranda's* constitutional requirement, thus, any statement made by a defendant after being given *Miranda* warnings in the middle of an interrogation is inadmissible. *Missouri v. Seibert,* 542 U.S. 600, 604-06 (2004). *Seibert* is inapplicable to Petitioner's case, because he was advised of his *Miranda* rights prior to any custodial interrogation. *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1130 (9th Cir.), *amended*, 416 F.3d 939 (9th Cir. 2005).

Based on the foregoing, there was no reasonable probability that a motion to suppress based on an alleged *Miranda* violation would have succeeded in this case, hence, Petitioner was not denied effective assistance by his trial counsel's failure to move for the suppression of his statement on this basis. *See Koras v. Robinson,* 123 F. App'x 207, 210-12 (6th Cir. 2005). Moreover, because the Michigan Court of Appeals reasonably determined that Petitioner's confession was voluntary, it was also a reasonable application for that court to determine that trial counsel was not ineffective for failing to move for the confession to be suppressed. *See Lewis v. Curtain*, 632 F. App'x 788, 795 (6th Cir. 2015).

The Court therefore denies the petition for a writ of habeas corpus.

17

The Court will deny Petitioner a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claim to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

Petitioner is denied leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## IV.

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and **DENIES** leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED:  March 17, 2023

19